UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

  v.                                Case No. 25-cv-666-pp

PREMIER CLOSERS LLC *d/b/a Upper East Bar*,
STEPHANIE R. TOWNSEND,
BILLY WILLIAMS and BRANDEN JOSEPH,

        Defendants.

---

**ORDER DENYING DEFENDANTS' MOTIONS TO SET ASIDE DEFAULT (DKT. NOS. 21, 23), GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 19) AND DISMISSING CASE**

---

On May 6, 2025, the plaintiff filed a complaint alleging that the defendants had intercepted and broadcast UFC and boxing matches to patrons at Upper East Bar without purchasing a broadcast license from the plaintiff. Dkt. No. 1. After obtaining entry of default, the plaintiff filed a motion for default judgment against the owners and operators of Upper East Bar—Premier Closers LLC, Stephanie Townsend, Billy Williams and Branden Joseph. Dkt. No. 19. Shortly after the plaintiff filed its motion, Townsend and Joseph—representing themselves—filed answers and identical motions to set aside the entry of default. Dkt. Nos. 20-23. The plaintiff did not respond to Townsend and Joseph's filings.

Because Townsend and Joseph have not shown good cause to set aside the entry of default, the court will deny their motions. The court will grant the

1

plaintiff's motion for default judgment and enter judgment against all the defendants in the amount of $12,060.

**I.   Background**

The plaintiff alleges that it was the exclusive distributor for two UFC and boxing pay-per-view matches that aired on May 6 and 20, 2023. Dkt. No. 1 at ¶3. It avers that it offered commercial sublicenses to broadcast the matches, but that rather than obtain one of these sublicenses, the defendants illegally intercepted the broadcast and aired it at Upper East Bar. Id. ¶¶13–14. The plaintiff alleges that this unauthorized broadcast violates federal cable and satellite piracy laws. Id. at ¶¶24–28.

The plaintiff brought the complaint against Premier Closers and individual owners or operators Stephanie Townsend, Billy Williams, Branden Joseph, Briana Redmond, Aaron Smith and Tianna Townsend. On August 12, 2025, the court prompted the plaintiff to file proofs of service, because the time to serve the summons and complaint had expired. Dkt. No. 4. On August 12, 2025, the plaintiff filed proof that it had effected service on Premier Closers, Smith, Stephanie Townsend and Tianna Townsend. Dkt. No. 5. The plaintiff requested an extension of time to serve Redmond, Williams and Joseph, dkt. no. 6, which the court granted, dkt. no. 7.

On September 2, 2025, the plaintiff voluntarily dismissed its claims against Tianna Townsend. Dkt. No. 8. That same day, the plaintiff asked the clerk to enter default against Stephanie Townsend and Premier Closers. Dkt. No. 9. The clerk did so. The plaintiff also filed a status report advising the court

2

that its claims against Smith had been stayed due to his bankruptcy proceedings and asking for another extension of time to serve Redmond, Williams and Joseph. Dkt. No. 10. The court granted the plaintiff's request and ordered that by the end of the day on November 3, 2025, it must file proof that it had served Redmond, Williams and Joseph. Dkt. No. 11.

On September 16, the plaintiff filed proof that it had served Joseph, dkt. no. 12, and on October 24, filed proof that it had served Williams, dkt. no. 13; subsequently it asked the clerk to enter default against them, dkt. no. 14. The clerk did so on October 31, 2025. When November 3 passed without proof that the plaintiff had effectuated service on Redmond, the court ordered that the plaintiff must file proof of service by November 12, 2025 or the court would dismiss Redmond for lack of service. Dkt. No. 15. The plaintiff then voluntarily dismissed its claims against Redmond, dkt. no. 16, and Smith, dkt. no. 18.

On December 22, 2025, the plaintiff moved for default judgment against the remaining defendants: Premier Closers, Stephanie Townsend, Williams and Joseph. Dkt. No. 19. On January 8, 2026, the court received four documents from Townsend and Joseph: identical motions to set aside the entry of default, dkt. nos. 21, 23, and nearly identical answers to the complaint, dkt. nos. 20, 22. Premier Closers and Williams have not filed anything.

## II.     Motions to Set Aside Default

In Townsend and Joseph's motions to set aside default, both allege that they were served with the summons and complaint "on December 23, 2025 via First Class Mail." Dkt. Nos. 21 at ¶1; 23 at ¶1. They assert that

3

> [b]efore formal service, [they were] included in prior communications from the business (Premier Closers LLC d/b/a Upper East Bar) to Plaintiff's counsel explaining that the allegations had been addressed on behalf of all associated parties, and that there was no malicious intent or personal profit from the alleged broadcast.

Dkt. Nos. 21 at ¶2; 23 at ¶2. Townsend and Joseph further state that they "did not act in bad faith and intend to file a formal Answer promptly" and argue that "[g]ranting default judgment would be unfair because [they] have been attempting to respond in good faith." Dkt. Nos. 21 at ¶¶3–4; 23 at ¶¶3–4.

Federal Rule of Civil Procedure 55(c) allows the court to set aside an entry of default "for good cause." To show good cause, the party seeking to vacate an entry of default must show: "'(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint.'" Cracco v. Vitran Exp. Inc., 559 F.3d 625, 630–31 (7th Cir. 2009) (quoting Sun v. Bd. of Trustees of Univ. of Ill., 473 F.3d 799, 810 (7th Cir. 2007)).

The first element requires a showing that the defendant "did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence." Cracco, 559 F.3d at 631. Townsend and Joseph assert that they have "been attempting to respond in good faith" after receiving the summons and complaint on December 23, 2025. But the proofs of service filed by the plaintiff show that Townsend personally was served with the summons and complaint almost six months earlier, on June 28, 2025. Dkt. No. 5. The process server served Townsend at an address on West Boehlke Avenue in Milwaukee, which is the same address that Townsend provided to the court. See id.; Dkt. No. 20. The process server attests that he served the summons

4

and complaint on Joseph on September 5, 2025 by leaving it with Joseph's spouse, Jonda Joseph, at Joseph's residence on West Arch Avenue in Milwaukee. Dkt. No. 12. That address matches the address that Joseph provided to the court in his filings. See id.; Dkt. No. 22. Townsend and Joseph thus had notice of this case months before December 23, 2025—the date on which they claim they were "served." They provide no explanation as to why they did not respond to the summons and complaint after being personally served with them in June and September 2025. Townsend and Joseph also state that before December 2025, they were included in communications with plaintiff's counsel regarding the case, again suggesting that they were aware of the case but chose not to respond. Townsend and Joseph have not shown good cause for the default.

Because Townsend and Joseph have not established the first element, the court need not examine whether they acted quickly or have a meritorious defense to the complaint. Townsend and Joseph have not shown that there is good cause for the court to set aside the entry of default, so the court will deny their motions.

### III. Entry of Default

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

5

Federal Rule of Civil Procedure 4 governs service of process in federal court. To serve an individual, the summons and complaint may be delivered to the individual personally or left "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2). A business may be served by delivering a copy of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).

The plaintiff properly served each of the defendants. The process server affidavits reflect that Stephanie Townsend personally was served on June 28, 2025 in both her individual capacity, dkt. no. 5, and as Premier Closers' registered agent, dkt. no. 5-2. See also Dkt. No. 19-9 at 2 (reflecting that Stephanie Townsend was the licensed agent of Premier Closers at the time of service). Williams personally was served on September 10, 2025. Dkt. No. 13. Service on Joseph was accomplished on September 5, 2025, by leaving the summons and complaint at his residence with his spouse. Dkt. No. 12. Townsend and Joseph have appeared to contest the entry of default, further confirming that they are aware of the suit. None of the defendants filed answers prior to their respective deadlines to respond to the complaint. The clerk's entry of default was proper.

## IV. Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a

6

Case 2:25-cv-00666-PP   Filed 02/20/26   Page 6 of 12   Document 24

defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). Such proceedings are unnecessary, however, if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

As the court has explained, the plaintiff alleges that it was the exclusive distributor for two UFC and boxing pay-per-view matches that aired on May 6 and 20, 2023. Dkt. No. 1 at ¶3. The applicable licensing agreements are attached to the plaintiff's motion for default judgment. Dkt. Nos. 19-3, 19-4. The plaintiff alleges that the defendants' unlicensed broadcast of these matches constitutes a willful violation of 47 U.S.C. §605, or in the alternative, a willful violation of 47 U.S.C. §553. Section 605 prohibits the unauthorized

7

interception of television programming transmitted over the air by wire or radio and §553 prohibits the unauthorized interception of television programming traveling over a cable network. United States v. Norris, 88 F.3d 462, 468–69 (7th Cir. 1996); 47 U.S.C. §§553, 605. The allegations in the complaint—which the court accepts as true because the defendants are in default—establish that the defendants unlawfully intercepted and broadcast the UFC and boxing matches to patrons at Upper East Bar in violation of either §605 or §553.

This court and others in this district have awarded damages under §605 where, as here, the defendants' failure to appear and engage in discovery makes it impossible to determine the method of interception. J & J Sports Prods., Inc. v. Mojitos Mexican Grill & Bar, LLC, Case No. 17-C-1272, 2018 WL 1709410, at *2 (E.D. Wis. Apr. 9, 2018) ("[B]ecause Mojitos' failure to appear or defend deprived Plaintiff of the opportunity to conduct discovery regarding the transmission at issue, I conclude that liability is appropriately established under § 605."); J & J Sports Prods., Inc. v. Curiel, Case No. 15-cv-1554, 2016 WL 3676493, at *3 (E.D. Wis. July 7, 2016) (same).

Under §605, the plaintiff may recover statutory damages of between $1,000 and $10,000 for each violation, enhanced damages of $10,000 to $100,000 per violation if the conduct was willful and costs and reasonable attorneys' fees. 47 U.S.C. §§605(e)(3)(B)(ii)–(iii), (C)(i)–(ii). The plaintiff requests $2,245 in statutory damages, representing the total licensing fees the defendants should have paid for the two events. Dkt. No. 19-1 at 9. The plaintiff's rate cards show that the licensing fee varies based on the total

8

occupancy of the establishment seeking to broadcast the events. Dkt. Nos. 19-5, 19-6. The plaintiff estimates the total occupancy of Upper East Bar as approximately eighty to ninety people. Dkt. No. 19-7 at 2. Based on Upper East's maximum occupancy of ninety people and the rate cards for the broadcasts, the defendants should have paid licensing fees of $1,095 and $1,150 for the two broadcasts, so the documentary evidence submitted supports the plaintiff's request for $2,245 in statutory damages.

The plaintiff also requests enhanced damages of $6,735, equal to three times its requested statutory damages, alleging that the defendants' conduct was willful. Dkt. No. 19-1 at 11. "'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'" Kingvision Pay-Per-View, Ltd. v. Scott E's Pub., Inc., 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (quoting ON/TV v. Julien, 763 F.2d 839, 844 (7th Cir. 1985)). A defendant's default may establish willfulness. Mojitos Mexican Grill, 2018 WL 1709410, at *2. Factors relevant to the assessment of the amount of enhanced damages include (1) the defendant's prior violations; (2) the amount by which the defendant profited from the violation; (3) the plaintiff's actual damages; (4) whether the defendant advertised for the event; and (5) whether the defendant charged a cover for the night in question. Id. at *3.

Here, the defendants conducted two unauthorized broadcasts in a month. Dkt. No. 1 at ¶3. The defendants also advertised the broadcasts on social media. Id. at ¶18; see also Dkt. Nos. 19-11, 19-12, 19-13 (social media posts). Although Upper East Bar has a maximum capacity of about ninety

9

Case 2:25-cv-00666-PP    Filed 02/20/26    Page 9 of 12    Document 24

people, a witness affidavit states that only around fifteen people attended the May 6, 2023 broadcast. Dkt. No. 19-7 at 2. The record contains no evidence of the plaintiff's actual damages or the amount by which the defendants profited from the broadcasts. In similar cases, courts in this district have applied a two- or three-times damages modifier. Mojitos Mexican Grill, 2018 WL 1709410, at *3 (applying a three-times damages modifier where there was no evidence of prior violations, approximately sixty-five to eighty people attended the unauthorized broadcast and the establishment did not charge a cover fee); Joe Hand Promotions, Inc. v. Crosstown Rival LLC, Case No. 21-CV-590, 2022 WL 1539924, at *2 (E.D. Wis. May 16, 2022) (applying a two-times damages modifier where there was no evidence of prior violations; the establishment conducted two unauthorized broadcasts, one of which was attended by just eight people; and the events were advertised on social media). The court will apply a three-times damages modifier and award $6,735 in enhanced damages.

Finally, the plaintiff seeks $2,185 in attorneys' fees and $895 in costs. Dkt. No. 19-1 at 13. Under §605(e)(3)(B), attorneys' fees and costs are mandatory if the court finds that a violation occurred. The plaintiff attached a declaration from its attorney, Ryan R. Janis, listing the attorneys' fees the plaintiff incurred. Dkt. No. 19-8 at ¶16. Janis's billing rate for this case was $250 per hour, and a paralegal assisting with the case billed at $100 per hour. Id. at ¶15. Janis states that his firm expended 7.7 hours of attorney time and 2.6 hours of paralegal time on this case from filing to the motion for default judgment. Id. at ¶17. The requested $895 in costs represents the $405 filing fee

and the costs of effectuating service. Id. at ¶18. The court has reviewed the supporting documentation and concludes that the claimed attorneys' fees and costs are reasonable. See Curiel, 2016 WL 3676493 at *5 (finding $250 hourly rate reasonable in a similar case and awarding a total of $1,250 in attorneys' fees). The court will award $2,185 in attorneys' fees and $895 in costs.

The plaintiff argues that the individual defendants should be held personally liable for the violations because they "had the right and ability to supervise the infringing activity and a direct financial benefit from the infringing activities." Dkt. No. 19-1 at 12 (citing Joe Hand Promotions, Inc. v. Speakeasy GB, LLC, 2013 WL 64630, at *2 (E.D. Wisc. Jan. 4, 2013)). According to the plaintiff, the defendants need not have personal knowledge of the infringing activity if these two elements are established. Id.

The complaint alleges that Townsend, Joseph and Williams all have ownership interests in Upper East Bar. Dkt. No. 1 at ¶¶5, 9, 10; see also Dkt. No. 19-10 at 3 (March 30, 2023 news article from Urban Milwaukee stating that Townsend, Joseph and Williams are co-owners of Upper East Bar through the Premier Closers entity). Taking these allegations as true, which the court must do on a motion for default judgment, the plaintiff has established that the individual defendants had the right and ability to supervise the broadcasts and directly benefited from the broadcasts by virtue of their ownership interests. Kingvision, 146 F. Supp. 2d at 961 (entering judgment against bar owner for unlicensed broadcast of boxing event); Joe Hand Promotions, Inc. v. Ewer, Case No. 09-C-612, 2009 WL 3269658, at *2 (E.D. Wis. Oct. 8, 2009) (citing J & J

11

Sports Productions, Inc. v. Ribeiro, 562 F. Supp. 2d 498 (S.D.N.Y.2008)) (granting default judgment against individual based on allegations in complaint that he had supervision and control over the broadcast). The individual defendants thus are jointly liable for the infringing activities with Premier Closers. The court will enter judgment against the defendants in a total amount of $12,060 and dismiss this case.

## V. Conclusion

The court **DENIES** defendant Stephanie Townsend's motion to set aside default. Dkt. No. 21.

The court **DENIES** defendant Branden Joseph's motion to set aside default. Dkt. No. 23.

The court **GRANTS** the plaintiff's motion for default judgment. Dkt. No. 19.

The court **ORDERS** that the clerk must enter default judgment in favor of the plaintiff and against defendants Premier Closers LLC, Stephanie Townsend, Billy Williams and Branden Joseph in the amount of $12,060.

The court **ORDERS** that this case is **DISMISSED**.

Dated in Milwaukee, Wisconsin this 20th day of February, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**